**KRISS & FEUERSTEIN LLP**
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
(212) 661-9397 – facsimile
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

*Attorneys for NPL Fund LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 689 St. Marks Avenue Inc., | Case No. 22-40043 (ESS) |
| | Hon. Elizabeth S. Stong |
| Debtor. | United States Bankruptcy Judge |

--------------------------------------------------------------x

**NPL FUND LLC'S MOTION FOR ENTRY OF AN ORDER: (I)
APPROVING THE DISCLOSURE STATEMENT; (II) SCHEDULING
HEARING ON CONFIRMATION OF THE PLAN AND APPROVING NOTICE
THEREOF; (III) APPROVING BALLOTS PURSUANT TO BANKRUPTCY; AND (IV)
APPROVING BID PROCEDURES PURSUANT TO BANKRUPTCY CODE SECTIONS
105(a), 363, 1123, 1124, 1125, 1126, 1128 AND 1129 AND BANKRUPTCY RULES 2002,
<u>3016, 3017, 3018, 3019, 3020 AND 6004</u>**

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

Secured creditor NPL Fund LLC (the "<u>Secured Creditor</u>" or the "<u>Proponent</u>"), a secured

creditor and mortgagee of 689 St. Marks Avenue Inc. (the "<u>Debtor</u>"), the above captioned debtor

and debtor-in-possession, in this Chapter 11 case (the "<u>Bankruptcy Case</u>"), hereby move (the

"<u>Motion</u>") before the United States Bankruptcy Court for the Eastern District of New York (the

"<u>Bankruptcy Court</u>") for the entry of an Order pursuant to Sections 105(a), 502, 1123, 1124, 1125,

1126, and 1128 of Title 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>"), Rules

1

2002, 3016, 3017, 3018, 3019, 3020, 6004, of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 3017-1, 3018-1, 3019-1, and 3020-1 of the Local Rules of the Bankruptcy Court (the "Local Rules"), (i) approving *NPL Fund LLC's Disclosure Statement for Plan of Liquidation for the Debtor* (ECF No. 49) (the "Disclosure Statement"), filed concurrently herewith; (ii) scheduling a hearing on confirmation (the "Confirmation Hearing") on *NPL Fund LLC's Plan of Liquidation for the Debtor* (ECF No. 48) (the "Plan"), filed concurrently herewith; (iii) establishing a deadline and procedures for filing objections to confirmation of the Plan; (iv) approving form and manner of Notice of Hearing on Confirmation, the ballots on the Plan, and related issues and approving procedures; (v) approving the Bid Procedures[1] (vi) granting such other related relief as this Court deems just and proper.  In support of the Motion, the Proponent respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code Sections 105(a), 363, 502, 1123(a), 1124, 1125, 1126, and 1128, Bankruptcy Rules 2002, 3016, 3017, 3018, 3019, and 3020, and Local Rules 3017-1, 3018-1, 3019-1, 3020-1 and 3020-2 and 6004-1.

## BACKGROUND[2]

3.      On January 12, 2022 (the "Petition Date"), the Debtor, under Case No. 22-40043, filed a petition (the "Petition") for Chapter 11 bankruptcy relief before this Court, which was

---

[1] Capitalized terms used but not defined herein shall have the same mearing as in the Plan and/or Disclosure Statement.
[2] For a more detailed recitation of the factual and procedural background of this matter, this Court is respectfully referred to the Disclosure Statement and requests same be incorporated by reference.

executed by Frank Morris, as President of the Debtor.

4.    The Debtor is a corporation that has an address of 264 St. James Pl. Suite #1, Brooklyn, NY 11236 whose business consists of ownership and operating of the Property. The Property is a mixed-use apartment and retail building. The Property generates substantially all of the Debtor's income, and on which Properties, no substantial business is being conducted by the Debtor other than the business of operating the Property and activities incidental thereto. The Debtor remains a debtor in possession for the duration of this matter.

**The Secured Creditor & The Loans**

5.    As more detailed in the Disclosure Statement, the Proponent has a secured claim against the Debtor in the amount of $2,302,550.82 as of the Petition Date, which is secured by a first position lien on the real property owned by the Debtor, which is commonly known as and located at 689 St. Marks a/k/a 670-680 Nostrand Avenue, Brooklyn, NY 11216 (Block: 1219, Lot: 44) (the "Property") (See Claim No. 4-1)

6.    On October 23, 2017, the Debtor executed, acknowledged and delivered to Spring Bank ("Spring Bank"), a Promissory Note (the "First Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay Spring Bank, in the principal amount of $1,600,000.00 (the "First Loan") was secured by a Mortgage Modification and Extension Agreement Securing a Debtor In the Amount of $1,600,000.00 (the "First Mortgage") encumbering the Property.  The First Mortgage was recorded on November 15, 2017, in the Office of the City Register of the City of New York, County of Kings (the "City Register") under CRFN: 2017000421848.

7.    As further security for the First Note, on October 23, 2017, the Debtor's principal, Frank C. Morris ("Morris") executed a Guaranty (the "F. Morris Guaranty"), guaranteeing all

obligations under the First Loan to Spring Bank in the principal amount of $1,600,000.00.

8.    On October 23, 2017, the Debtor and Spring Bank also entered into a Commercial Loan Agreement (the "Commercial Loan Agreement") in connection with the First Loan.

9.    On October 30, 2019, the Debtor and Spring Bank agreed to amend the First Note pursuant to an Amended and Restated Promissory Note (the "Amended First Note"), which, amongst other things, extended the First Loan maturity date to October 30, 2024 (the "First Loan Amended Maturity Date").

10.    On or about October 30, 2019, the First Mortgage was amended and modified by that certain Mortgage Modification and Extension Agreement (the "Amended First Mortgage"), which amongst other things modified the principal balance of the Mortgage to $1,586,795.31 and extended the maturity date to October 30, 2024.

11.    On or about October 30, 2019, the Commercial Loan Agreement by that certain First Omnibus Amendment to Loan Documents (the "Commercial Loan Amendment"), was modified to, amongst other things: (a) extend the Maturity Date to October 30, 2024 and (b) the contractual rate of interest on the First Note was fixed at 5.5%.

12.    On or about June 8, 2020, the Debtor and the Spring Bank entered into a Modification Agreement (the "First Loan Modification"), whereby Spring Bank agreed to defer certain payments due pursuant to the terms of the First Loan, in accordance with the terms of and conditions of the First Loan Modification.

13.    On or about November 23, 2020, the Debtor and Spring Bank entered into a Second Modification Agreement to Amended and Restated Promissory Note (the "Second Loan Modification" and together with the First Loan Modification, collectively, "Modifications"), whereby Spring Bank further agreed to further defer certain payments due pursuant to the terms

of the First Loan, in accordance with the terms and conditions of the Second Loan Modification.

14.     The First Note, First Mortgage, Morris Guaranty, J. Morris Guaranty, Commercial Loan Agreement, Amended First Note, Amended First Mortgage, Commercial Loan Amendment, Modifications, together with all other documents and/or agreements that were executed and/or delivered in connection with the First Loan, are herein collectively referred to as the "First Loan Documents".

15.     On October 30, 2019, the Debtor executed, acknowledged and delivered to Spring Bank, a Line of Credit Note (the "Second Note"), bearing said date, wherein and whereby it was covenanted and agreed that it would repay Spring Bank, in the principal amount of $875,000.00 (the "Second Loan") with interest thereon as set forth in the Second Note which was secured  by a Mortgage Modification and Extension Agreement Securing a Debtor In the Amount of $875,000.00 (the "Second Mortgage") to Spring Bank encumbering the Property.  The Second Mortgage was recorded on November 13, 2017, in the City Register under CRFN: 2019000369209.

16.     On October 30, 2019, as further security for the Second Note, Morris ("Morris") executed a Guaranty (the "Guaranty"), guaranteeing all obligations under the Second Loan to Spring Bank in the principal amount of $875,000.00.

17.     On October 30, 2019, the Debtor and Spring Bank also entered in a Line of Credit Agreement (the "Line of Credit Agreement").

18.     On or about November 23, 2020, the Debtor and Spring Bank into that a Modification Agreement to Line of Credit Promissory Note (the "Line of Credit Modification"), whereby (among other thigs) Spring Bank agreed to defer certain payments due pursuant to the terms of the Second Loan and extend the maturity date from October 30, 2020 to February 28,

2021.

19.     The Second Note, Second Mortgage, Guaranty, Line Credit Agreement, Line of Credit Modification, together with all other documents and/or agreements that were executed and/or delivered in connection with the Second Loan, are herein collectively referred to as the "Second Loan Documents".

### Assignment of the Loans to Secured Creditor

20.     On April 19, 2021, Spring Bank assigned the First Note and First Mortgage as amended and modified thereafter to Secured Creditor pursuant to an Assignment of Mortgage (the "First Loan Assignment"), which was recorded in the City Register on June 7, 2021 under CRFN: 2021000210591. In addition, on April 19, 2021, Spring Bank endorsed the Amended First Note to Secured Creditor as evidenced by the Allonge to First Note dated April 19, 2021 (the '"First Loan Allonge").

21.     On April 19, 2021, Spring Bank assigned the Second Note and Second Mortgage as amended and modified thereafter to Secured Creditor pursuant to an Assignment of Mortgage (the "Second Loan Assignment"), which was recorded in the City Register on June 7, 2021 under CRFN: 2021000210605. In addition, on April 19, 2021, Spring Bank endorsed the Second Note to Secured Creditor as evidenced by the Allonge to the Second Note dated April 19, 2021 (the "Second Loan Allonge") affixed to the Note.

### The Defaults and Foreclosure Action

22.     As a result of the First Loan Events of Default and Second Loan Events of Default, pursuant to the terms of the First Loan Documents and Second Loan Documents, Secured Creditor declared the balance of the principal indebtedness immediately due and payable and commenced a mortgage foreclosure action (the "Foreclosure Action") in the Supreme Court of

6

the State of New York, County of Kings (the "State Court") under Index No. 520517/2021 in the matter originally styled *NPL Fund LLC v. 689 St. Marks Avenue, Inc. et al.* The Summons and Complaint (the "Complaint") were filed with the Kings County Clerk on August 12, 2021.

23.    By order entered on October 8, 2021, the State Court granted the Receiver Application (the "Receiver Order") and appointed Barton Schwartz as Receiver (the "Receiver"). On December 22, 2022, the Receiver issued a Demand for Compliance (the "Demand for Compliance") to the Debtor that it comply with the Receiver Order, by (amongst other things) that Debtor provide all leases to the Receiver and to turnover all funds to the Receiver.

24.    The Debtor defaulted in the Foreclosure Action. On October 7, 2021, Debtor filed a Hardship Declaration dated October 4, 2021 pursuant to Administrative Order of the Chief Administrative Judge No. AO/262/21 (the "Hardship Declaration").

25.    On November 11, 2021, Secured Creditor filed an application to vacate the Hardship Declaration (the "Motion to Vacate") that was returnable on December 15, 2021 because (among other things): (i) Debtor and Morris had defaulted in the Foreclosure Action; (ii) the various Covid-19 Moratoriums were inapplicable because Debtor's principal (Morris) controlled multiple properties and business. On December 15, 2021, Debtor, by its counsel, Moshe Silver, Esq. filed an untimely attorney affirmation in opposition to the Motion to Vacate (the "Opposition").

26.    On December 22, 2021, after oral argument, the Court entered an order granting the Motion to Vacate (the "Order Vacating Hardship").

**The Schedules, Proofs of Claim and Other Post-Filing Events**

27.    On January 12, 2022 (the "Petition Date"), the Debtor, under Case No. 22-40043 filed a petition (the "Petition") for Chapter 11 bankruptcy relief before this Court, which was

7

executed by Frank Morris, as President of the Debtor.

28.     In accordance with the requirements of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed their Schedules of assets and liabilities, including schedules of all its known creditors and the amounts and priorities of the Claims the Debtor believe are owed to such creditors.

29.     On August 16, 2022, Court entered an order (the "<u>Bar Date Order</u>") fixing October 17, 2022 as the last date for filing any and all claims in this matter (ECF No. 43).

30.     The Debtor, in its Schedules (including Amended Schedules), identifies one secured creditor and four unsecured creditors.  To date, three creditors have filed proofs of claim, one of which was withdrawn (See Claim 1-2).

31.     On or about May 12, 2022 the Debtor filed a chapter 11 plan (the "<u>Debtor's Plan</u>") and disclosure statement (the "<u>Debtor's Disclosure Statement</u>") (ECF No. 30 & 32).  To date, the Debtor has not sought to solicit acceptances or sought any further extensions of the exclusive periods.  Accordingly, the Debtor's exclusive periods to file and solicit a chapter 11 plan have expired.

32.     On November 17, 2022, Proponent filed its Plan and Disclosure Statement (ECF No. 48 & 49).

**<u>The Plan and the Broker</u>**

33.     The Plan calls for the sale of the Properties in an auction pursuant to Bid Procedures attached to the Disclosure Statement as Exhibit A.  The Proponent submits that the Bid Procedures are reasonable and will result in a Sale of the Properties for the highest and best price.  Accordingly, the Proponent respectfully requests approval of the Bid Procedures.

34.     In furtherance of that process, the Proponent will retain Rosewood Realty Group

as the Broker to sell the Property. Pursuant to the Broker Engagement Agreement, attached to the Disclosure Statement as Exhibit B.  the Broker will use its commercially reasonable efforts to obtain a satisfactory purchaser for the Property on such terms as are acceptable to the Proponent.

### RELIEF REQUESTED

35.    The Proponent respectfully requests entry of the proposed order (the "Disclosure Statement Order"), substantially in the form annexed hereto as Exhibit 1, granting the following relief and such other relief as is just and proper:

a.  Disclosure Statement: approving the Disclosure Statement as containing "adequate information" under Section 1125 of the Bankruptcy Code;

b.  Confirmation Hearing: establishing the date of the Confirmation Hearing;

c.  Voting/Objection Deadline:  establishing the deadlines to vote on and/or object to the Plan; and

d.  Approve the Bidding Procedures annexed to the Disclosure Statement as **Exhibit A.**

e.  Approve the proposed ballots, annexed to the Disclosure Statement as **Exhibit C**.

f.  Approving the Sale Procedures as set forth below and in the Order.

36.    As noted above, concurrently herewith, the Proponent filed the Plan and Disclosure Statement.  In accordance with Section 1126 of the Bankruptcy Code, the Plan classifies holders of claims into certain classes for all purposes, including with respect to voting to accept or reject the Plan, as follows:

| SUMMARY AND STATUS OF VOTING RIGHTS | | | |
|---|---|---|---|
| Class | Class Description | Status | Voting Rights |
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | NPL Fund Secured Claim | Impaired | May Vote |
| 3 | SBA Secured Claim | Impaired | May Vote |
| 4 | Priority Claims | Unimpaired | Presumed to Accept |

4869-9279-3663, v. 1

| 5 | General Unsecured Claims | Impaired | May Vote |
| 6 | Interests in Debtor | Unimpaired | Presumed to Accept |

37.     Based on the foregoing, the Proponent will not solicit votes from holders of claims in Classes 1, 4, and interests in Class 6, as such claims are unimpaired and/or are deemed to have accepted the Plan, as discussed more fully below.  Claims in Class 2, 3 and 5 are impaired and will be sent a ballot.  If there are no votes in an impaired class received by the deadline, the Proponent respectfully requests that such Class be deemed to have voted in favor of confirmation of the Plan.

## BASIS FOR RELIEF

## POINT I

### This Court Should Approve the Disclosure Statement

38.     The Disclosure Statement should be approved in accordance with the provisions of Section 1125 of the Bankruptcy Code.  Under Section 1125(b) of the Bankruptcy Code, prior to soliciting acceptances with respect to a chapter 11 plan, a proponent must provide holders of claims against the debtor with the proposed plan and a written disclosure statement which has been approved by the Bankruptcy Court as containing "adequate information". Specifically, Bankruptcy Code Section 1125(b) provides, in pertinent part, that:

> [a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information . . . .

11 U.S.C. § 1125(b).  Bankruptcy Code Section 1125(a) further defines adequate information to mean:

> information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the
> debtor, and a hypothetical investor typical of the holders of claims
> or interests in the case, that would enable such a hypothetical
> investor of the relevant class to make an informed judgment about
> the plan . . .

11 U.S.C. § 1125(a).  Thus, a disclosure statement must, as a whole, provide such information as

is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders

entitled to vote on the plan.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).

*See also In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 600 (Bankr. S.D.N.Y. 2006) (noting

that "an adequate disclosure determination requires a bankruptcy court to find not just that there

is enough information, but also what is said is not misleading.").

39.     Section 1125 also provides that "in determining whether a disclosure statement

provides adequate information, the court shall consider the complexity of the case, the benefit of

additional information to creditors and other parties in interest, and the cost of providing

additional information . . . ."  To that end, courts are granted broad discretion when reviewing the

adequacy of the information contained in a disclosure statement.  *See, e.g., In re A.H. Robins Co.,

Inc.*, 880 F.2d 694, 696 (4th Cir. 1989); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th

Cir. 1988); *In re Ionosphere Clubs*, Inc., 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995); *Kirk v. Texaco,

Inc.*, 82 B.R. 678, 682 (Bankr. S.D.N.Y. 1988) (noting that "[t]he legislative history could hardly

be more clear in granting broad discretion to bankruptcy judges under § 1125(a)").  This grant of

discretion was intended to accommodate the broad range of circumstances that accompany

chapter 11 cases.  *See* H.R. Rep. No. 595-95, 1st Sess. 408-09 (1977).  Accordingly, the

determination of whether a disclosure statement contains adequate information is to be made on

a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001); *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (the bankruptcy court has "wide discretion to determine on a case by case basis whether a disclosure statement contains adequate information, without burdensome, unnecessary and cumbersome detail").

40.     The Proponent respectfully submits that the proposed Disclosure Statement contains "adequate information" with respect to the Plan within the meaning of Section 1125(a) and provides holders of impaired claims that are entitled to vote to accept or reject the Plan with sufficient information to make an informed judgment regarding the Plan.  Among other things, the Disclosure Statement includes:

    a)  a summary of the Plan, including classification and treatment of Claims against the Debtor;

    b)  general information regarding the Debtor, including an overview of the sale of the Debtor's assets;

    c)  certain events leading to the filing of this Chapter 11 case;

    d)  the relief requested and events occurring during the course of this Chapter 11 Case to date;

    e)  a description of the means of implementation, including, without limitation, a detailed background and description of the proposed post- confirmation sales; and

    f)  potential risk factors affecting the Plan.

41.     Accordingly, the Proponent seeks this Court's approval of the Disclosure Statement as containing adequate information required by Section 1125 of the Bankruptcy Code. Pursuant to Bankruptcy Code Section 1125(b), the Proponent also requests that this Court authorize the Proponent to transmit copies of the Disclosure Statement (together with all exhibits, including the Plan, and related documents), as approved, in the manner and upon such persons as set forth below.

4869-9279-3663, v. 1

## POINT II

### This Court Should Approve The Procedures for Solicitation

42.     Bankruptcy Rule 3017(d) requires the following materials to be distributed to creditors upon the approval of a disclosure statement:

a.   the plan, or court-approved summary of the plan;

b.   the disclosure statement approved by the Bankruptcy Court;

c.   notice of the time within which acceptances and rejections of such plan may be filed; and

d.   any other information as the Bankruptcy Court may direct, including any court opinion on approving the disclosure statement or a court-approved summary of the opinion.

Bankruptcy Rule 3017 and Local Rule 3017-1 also require that notice of the time fixed for filing objections and the hearing on confirmation be mailed to all creditors in accordance with Bankruptcy Rule 2002(b), and that a form of ballot (conforming to the appropriate Official Form) be mailed to creditors who are entitled to vote on the Plan.

43.     Pursuant to Section 1126(f) of the Bankruptcy Code, classes of creditors that are not impaired under the Plan are "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f). Accordingly, the Proponent respectfully submits that the transmittal of a Solicitation Package to the holders of unimpaired claims who are not entitled to vote and are deemed to have accepted the Plan, is not necessary.  Specifically, the Proponent proposes it is not required to provide the following categories and classes of claims with a Solicitation package: Administrative Claims, claims for professional fees, and claims or interests in Classes 1, 2, 4, and 6 (collectively, the "Non-Voting Parties").   The Proponent proposes that all parties, including the Non-Voting Parties, receive a notice (the "Confirmation Hearing Notice"), substantially in the form attached hereto as Exhibit 2, of:  (i) the approval of the Disclosure Statement; (ii) attaching a copy of the

Disclosure Statement Order, as approved by the Bankruptcy Court (iii) contact information for parties wishing to request a hard copy of the Disclosure Statement and the Plan, all as may be amended or supplemented, from the Proponent; (iv) the date of the Confirmation Hearing, (v) the deadline and procedures for filing objections to confirmation of the Plan.  The Proponent believes that transmittal and mailing of the Confirmation Hearing Notice, as applicable, provides adequate notice to such creditors and complies with all applicable Bankruptcy Rules.

44.     Claims in Classes 2, 3 and 5, which are impaired, will be provided full solicitation materials: *i.e.*, the Plan, the Disclosure Statement, together with all exhibits thereto, and a ballot substantially similar to the ballots attached to the Disclosure Statement as Exhibit C.

45.     The Proponent anticipates that some of the Confirmation Hearing Notices and full solicitation materials may be returned as undeliverable by the United States Postal Service.  To the extent any Confirmation Hearing Notices or full solicitation materials are returned as undeliverable, the Proponent also seeks the Bankruptcy Court's approval for a departure from the strict notice rule, and request that they be excused from re-mailing or otherwise re-sending Confirmation Hearing Notices to entities whose mail is returned as "undeliverable" at such addresses or "moved - no forwarding address" or similar marking, unless the Proponent is provided with, or obtains, accurate addresses for such entities by the date that is no less than two weeks before the date of the Confirmation Hearing.

46.     If there are no votes in an impaired class received by the deadline, the Proponent respectfully requests that such Class(es) be deemed to have voted in favor of confirmation of the Plan.  *See, e.g., In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266–67 (10th Cir. 1988); *In re Adelphia Communications Corp*, 368 B.R. 140, n. 273 (Bankr. S.D.N.Y 2007).

**Confirmation Hearing Date**

47.     Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation."

48.     In addition, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice by mail to be given to all creditors of the time fixed for filing objections to, and the hearing to consider, confirmation of a plan.  In accordance with Bankruptcy Rules 2002(b) and 3017(c), the Proponent requests that the Confirmation Hearing be scheduled for on or about February 28, 2022.  The proposed date of the Confirmation Hearing will enable the Proponent to pursue confirmation of the Plan in accordance with all applicable Bankruptcy Rules.

49.     In accordance with the Bankruptcy Rules, the Proponent proposes to provide within the Confirmation Hearing Notice information regarding (i) the time fixed for filing objections to confirmation of the Plan, (ii) certain disclosures regarding the releases, injunctions, and exculpation provided for in the Plan and (iii) the time, date, and place for the Confirmation Hearing.

50.     The Proponent also requests that the Bankruptcy Court order that the Confirmation Hearing may be continued from time to time by announcing such continuance in open court or by filing a notice of adjournment, and that the Plan may be modified pursuant to Section 1127 of the Bankruptcy Code prior to, during, or as a result of the Confirmation Hearing, in each case, without further notice to parties in interest; provided, however, that any such modification does not materially and adversely affect any class of claims under the Plan.

4869-9279-3663, v. 1

## POINT III

**This Court Should Set A Confirmation Hearing Date, Set An Objection Deadline, Approve Ballots and Permit Proponent to Make Non-Substantive Changes to Disclosure Statement and Plan**

## Objections to Confirmation

51.     Under Bankruptcy Rules 2002(b) and (d), all creditors and indenture trustees must be given not less than twenty-eight (28) days' notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

52.     The Proponent requests that the Bankruptcy Court fix the last date for filing and serving objections to confirmation of the Plan as seven (7) days before the Confirmation Hearing (the "Objection Deadline").  Setting the Objection Deadline at seven (7) days before the Confirmation Hearing will provide parties in interest with sufficient time to consider whether to interpose any objections to the Plan, while providing the Bankruptcy Court, the Proponent and all parties in interest with sufficient time to consider and, if necessary, respond to any objections before the Confirmation Hearing.  To the extent objections to confirmation are filed, the Proponent requests that they and other parties in interest, be authorized to file and serve a reply to any such objections no later than the day prior to the Confirmation Hearing.

53.     In addition, the proposed Confirmation Hearing Notice provides, and the Proponent requests, that the Bankruptcy Court direct, any objections or responses to the proposed confirmation of the Plan to: (i) be in writing; (ii) state the name, address, and nature of the claim of the objecting or responding party; (iii) state with particularity the basis and nature of any objection or response and, if practicable, a proposed modification to the Plan that would resolve

such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed electronically no later than the Objection Deadline with the Clerk of the United States Bankruptcy Court for the Eastern District of New York, with a courtesy copy delivered to Judge Drain's Chambers and served so that objections and responses are actually received on or before the Objection Deadline by: (a) counsel for the Proponent; and (b) Office of the United States Trustee (collectively, the "Notice Parties").

54.     The Proponent submits that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, requests that the Bankruptcy Court approve these procedures for filing objections to the Plan and any responses thereto.

**Voting on the Plan and Related Matters**

55.     The Proponent requests that the Bankruptcy Court approve the ballots for creditors in Classes 3 and 5 and set the voting deadline as the same as the Objection Deadline, which should provide ample time for voting and tabulation prior to the Confirmation Hearing.  The Proponent submits that the foregoing satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The remaining creditors and interest holders, in Classes 1, 4, and 6 are unimpaired and the creditor in Class 2 is the Proponent. Accordingly, for creditors and interest holders in such classes, there is no need to fix the voting deadline as balloting is not required because such classes are conclusively presumed to have accepted the Plan.

**Non-Substantive Changes**

56.     The Proponent seeks authorization from the Bankruptcy Court to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Bankruptcy Court, including without limitation changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Confirmation Hearing Notice and full solicitation materials prior

to their mailing.

## POINT IV

### This Court Should Authorize Procedures Relating to the Sale

A.    Overview of Sale Process and Basis for Sale Pursuant
      to Section 363 of the Bankruptcy Code and Plan.

57.    By this Motion, the Proponent seeks authorization to, *inter alia*, proceed with a public auction sale of the Property in accordance with Sections 363 and 1123 of the Bankruptcy Code and the Plan.

58.    As reflected in the Plan and Disclosure Statement, the Proponent has consented to the Sale of the Property.  Pursuant to the Bidding Procedures annexed to the Disclosure Statement, the Proponent is a Qualified Bidder and although under no obligation to do so, is entitled to credit bid up to and including the full amount of their claims as of the Auction Date for the Property pursuant to 11 U.S.C. § 363(k), without the need for any deposit or fulfilling the other requirements for a Potential Bidder to be a Qualifying Bidder, which claim may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums that the Proponent is entitled to pursuant to the Note and Mortgage incurred after the Petition Date.

59.    The winning bidder at the Sale shall take title to the Property free and clear of all liens, claims and encumbrances pursuant to Sections 363(f) and 1123(a)(5) of the Bankruptcy Code, except that the  Proponent's Mortgage may be assigned to the winning bidder's lender at the winning bidder's option.

60.    It is in the best interests of the Debtor's estate and all of its creditors for the Property to be sold.  The Proponent has consulted with its professionals and determined in its reasonable business judgment that it is both necessary and appropriate to proceed with the Sale

at this time. The Proponent proposes to conduct the Sale on a date following the confirmation of the Plan with ample time to market the Sale and the Property.

61.    In addition, pursuant to Section 1146(a) of the Bankruptcy Code, the deed conveying the Property in accordance with the Sale and any deed further conveying the Property within two years following the Sale by the Proponent or their affiliate or designee shall be an instrument of transfer in connection with or in furtherance of the Plan and not be subject to tax under any law imposing a stamp tax, real estate Transfer Taxes, mortgage recording tax or similar tax, and, to the extent provided by Section 1146(a) of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax.

62.    It is respectfully submitted that as further stated in the Disclosure Statement and Plan, the Sale of the Property is in the best interest of the Estate and should be approved.

B.    <u>The Bidding Procedures Should Be Approved and Sale Approval Hearing Set.</u>

63.    The key provisions of the proposed Bidding Procedures of the Property are as follows:

-    Minimum qualifying bid amount of $3,500,000.00, subject to further adjustment.

-    Deposit of 10% of the potential bid in accordance with the bidding instructions;

-    The Proponent (or its assignee, nominee or designee) will be a qualified bidder without having to satisfy the requirements of being a qualified bidder, including the deposit requirement

-    the Proponent (although not required to do so) shall be permitted to credit the full amount of its claim

-    the successful bidder must close title on or before twenty-one (21) days following the Sale, time being of the essence as to the successful bidder;

-    the successful bidder must pay all county, state or other property transfer taxes in connection with the Sale and transfer of the Property;

-    the successful bidder will be responsible for a buyer's premium for the broker's

commission;

- the Property is being sold "as is," "where is," "with all faults," and without any representations or warranties of any kind; and

- the Property is being sold free and clear of encumbrances, and interests (as defined the Plan and Disclosure Statement), except that the Proponent's Mortgage may be assigned to the winning bidder's lender at the successful bidder's option.

64.    The Proponent submits that the proposed Bidding Procedures are reasonably designed to ensure that the Debtor's estate receives the maximum benefit from the sale of the Property and therefore warrant Court approval.

65.    The Proponent propose that, following the Sale, an affirmation to confirm the results of the sale will be submitted to the Court along with the proposed Sale Approval Order.

66.    The Proponent also proposes that the Sale Approval Hearing (the "<u>Sale Approval Hearing</u>") be conducted within 30 days following the auction.

C.    <u>The Sale Approval Order Should Be Entered</u>

67.    By this Motion, the Proponent will also seek entry of the Sale Approval Order following the hearing to confirm the results of the Sale.  As set forth above, the Proponent intends to submit an affirmation confirming the results of the Sale and the proposed Sale Approval Order prior to the Sale Approval Hearing.

68.    First, the Sale of the Property represents a reasonable exercise of business judgment and should be approved.  Administrative Order 557 supplements the requirements of Section 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and provides, in pertinent part, that:

> When an auction is contemplated, … should file a single motion seeking the entry of two orders to be considered at two separate hearings. The first order . . . will approve procedures for the sale process, including any protections for an initial bidder, or stalking horse buyer, and the second order . . . will approve the sale to the successful bidder at the auction.

69.    In addition, Section 105(a) of the Bankruptcy Code grants the Court the authority

to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

70.     Further, both Sections 1123(a)(5)(D) and 1123(b)(4) permit sales as contemplated the Plan and Bid procedures.  11 U.S.C. §§ 1123 (a)(5)(D) and 1123(b)(4). Sections 1123(a)(5)(D) notes a plan can provide adequate means of implementation if the plan provides for a "Sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of the property of the estate among those having an interest in such property of the estate" while Section 1123(b)(4) provides a plan may provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interest. *See Id.*

71.     Here, as further stated in the Plan and Disclosure Statement, the Proponent is using sound business judgment to determine that selling the Property outside the ordinary course of business pursuant to at the Sale is justified, necessary and appropriate. Indeed, compelling business justifications exist to authorize the Sale as set forth herein.

72.     Second, the Property should be sold free and clear of any and all interests pursuant to Section 363 of the Bankruptcy Code. Section 363 of the Bankruptcy Code permits a Debtor-in-possession to sell property free and clear of <u>any</u> interest in such property if: (1) applicable state law will permit the sale; (2) such entity consents; (3) the price at which the assets is being sold exceeds the aggregate value of all liens on such property; (4) the interest is in *bona fide* dispute; or (5) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest. All known interests in the Property of which the Property will be sold free and clear fall into one of these categories.

73.     Furthermore, all known holders of an interest in the Property will be provided

notice of this Motion and the proposed Sale of the Property. Thus, all known holders of an interest in the Property will have an opportunity to oppose the Sale contemplated herein.

74.    Based on the foregoing, the requirements of Section 363(f) of the Bankruptcy Code are satisfied, and the Property may be sold free and clear of any and all Interests.

75.    Finally, the successful bidder should be afforded protection under Section 363(m) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, Section 363(m) provides as follows:

> (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); *In re Stein & Day, Inc.,* 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

76.    The United States Court of Appeals for the Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Trustee, or an attempt to

take grossly unfair advantage of other bidders."). *See also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

77.     Here, the Proponent intends to conduct the Auction and Sale of the Property.  The Proponent following the Auction, it will seek to confirm the sale to the highest or best bidder.  The Proponent anticipates that such bidder for the Property will be acting in good faith since the Sale will be conducted at arm's-length with an opportunity for competitive bidding after an appropriate marketing process by the Broker.

78.     Accordingly, the Sale Approval Order will afford the successful bidder at the Sale the protections available under Section 363(m) of the Bankruptcy Code.

79.     Pursuant to Administrative Order 557, the Proponent is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Proponent submits that there are no "extraordinary provisions" with respect to the proposed Sale that have not otherwise been highlighted herein.

80.     Accordingly, the Sale Approval Order should be approved by this Court.

## NOTICE

81.     Notice of this Motion has been given to (i) counsel to the Debtor, (ii) the United States Trustee; (iii) all creditors; and (iv) all parties who have filed a notice of appearance in this case pursuant to Bankruptcy Rule 2002.  The Proponent submits that no other or further notice need be provided, except to the extent sought in this Motion and approved by the Bankruptcy Court.

## NO PRIOR REQUEST

82.     No previous application for the relief sought herein has been made by the Proponent to this or any other court.

[THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY BLANK]

4869-9279-3663, v. 1

**WHEREFORE,** the Proponent respectfully requests that the Bankruptcy Court enter the proposed order attached hereto as Exhibit 1, approve this Motion in its entirety and grant such other and further relief as is just and proper.

Dated: New York, New York
       November 17, 2022

KRISS & FEUERSTEIN LLP

By:    */s/ Jerold C. Feuerstein*
       Jerold C. Feuerstein, Esq.
       Daniel N. Zinman, Esq.
       Stuart L. Kossar, Esq.
       360 Lexington Avenue, 12th Floor
       New York, New York 10017
       (212) 661-2900

*Attorneys for NPL Fund LLC*

4869-9279-3663, v. 1